TUANA`ITAU TUIA, for himself and Members of the
TUANA`ITAU FAMILY,
Plaintiffs/Counterdefendants,

v.

NU`U LEOMITI and Members of the LEOMITI FAMILY,
Defendants/Counterclaimants/
Cross-Claimants,

v.

TOLUAO SEUTA`ATIA and Members of the TOLUAO FAMILY,
Cross-Defendants.

---

FILIPELE LEIU LEOMITI, for himself as Senior Matai and on
behalf of the LEOMITI FAMILY, Plaintiffs,

v.

SEUTAATIA TOLUAO, Defendant.

---

MINA THOMPSON and MOANANU VA, for themselves
and on behalf of the MOANANU FAMILY, Intervenors/Objectors.

High Court of American Samoa
Land and Titles Division

LT No. 19-98
LT No. 19-95

October 1, 2003

Before RICHMOND, Associate Justice, and ATIULAGI, Associate
Judge.

Counsel: For Defendants/Counterclaimants/Cross-Claimants Nu`u

Leomiti, and Leomiti Family, and Plaintiffs Filipele Leiu
Leomiti and Leomiti Family, Arthur Ripley, Jr.
For Plaintiffs/Counterdefendants Tuana`itau Tuia and
Tuana`itau Family, and Cross-Defendant/Defendant
Seutaatia Toluao and Cross-Defendants Toluao Family,
S. Salanoa Aumoeualogo
For Intervenors/Objectors Mina Thompson, Moananu Va, and
Moananu Family, Katopau T. Ainu`u

## OPINION AND ORDER

In *Toluao v. Haleck*, LT No. 40-80, slip op. (Land & Titles Div. Apr. 13, 1983) ("LT No. 40-80"), this Court divided a surveyed plot of land into three separate parcels, each parcel owned by a distinct family as communal land.[1] Determination of the exact location of the communal land awarded to the three families is at the essence of the present consolidated actions.

### Procedural Summary

On April 10, 1995, Plaintiffs Filipele Leiu Leomiti ("Filipele") and Leomiti Family ("Leomiti family") filed LT No. 19-95 against Defendant Seutaatia Toluao ("Toluao") for declaration of the land determined to be the Leomiti family's communal land in LT No. 40-80.

On December 17, 1998, Plaintiffs Tuana`itau Tuia ("Tuana`itau") and Tuana`itau Family ("Tuana`itau family") filed LT No. 19-98 against Defendants Nu`u Leomiti ("Nu`u") and Leomiti Family to enjoin them from trespassing on the land determined to be the Tuana`itau family's communal land in LT No. 40-80. On January 27, 1999, Nu`u and the Leomiti family counterclaimed to enjoin Tuana`itau and the Tuana`itau family from trespassing on the land determined to be the Leomiti family's communal land in LT No. 40-80. On February 26, 1999, the cross-claim of Nu`u and the Leomiti family was filed, joining Toluao and the Toluao family as parties.

Additionally, on February 26, 1999, LT No. 19-95 and LT No. 19-98 were consolidated. On June 11, 1999, the intervention of Intervenors Mina Thompson ("Thompson"), Moananu Va ("Moananu"), and Moananu Family ("Moananu family") was authorized.

Several pretrial orders were issued to maintain the peace among the parties and to facilitate survey retracing of the land each family claims to

---

[1] The trial decision was appealed, *Haleck v. Toluao*, AP No. 10-83, but upon the stipulation of the parties to the appeal, the appeal was dismissed in due course.

own as a result of the decision in LT No. 40-80.

After numerous continuances, trial took place during portions of nine days, beginning on February 13, 2003 and concluding on March 1, 2003. Counsel and representatives of the Leomiti, Tuana`itau, Toluao, and Monananu families were present throughout the trial proceedings.

## Discussion

### A. Location of the Land at Issue

All parties to this action presently recognize "Lemauga" as the name of the land at issue ("the land") in LT No. 40-80. The land is located in the vicinity of a mountain ridge, having an elevation of approximately 1,183 feet at its highest point. The village center of Pava`ia`i lies in the plain below the southeast side of the ridge. The village center of A`oloau lies atop the higher mountain to the northwest of the ridge.

The exact location of the land was the subject of extended technical and detailed testimony of Lawrence P. French ("French"), an expert professional surveyor, taken during the Leomiti family's case-in-chief and in rebuttal. French opined that the survey of approximately 13.5 acres of the land in evidence in the LT No. 40-80 decision actually contained approximately 13.62 acres ("Plot A") and was located mostly on the westerly slope of the ridge. French further opined that the subsequent survey of approximately 1774 acres in evidence in the sequel decision to LT No. 40-80 placed the 17.74 acres mostly on the easterly slope of the ridge. *See generally Leomiti v. Toluao*, 11 A.S.R.2d 49 (Land & Titles Div. 1989) ("LT No. 35-82/LT No. 10-83"). Discussed in detail below, as a result of the decision in LT No. 35-82/LT No. 10-83, the 17.74 acre parcel became approximately 13.66 acres, adjusted to approximately 13.574 acres ("Plot B").

French pointed out numerous significant errors and, in his opinion, unprofessional work in the preparation of the surveys used in LT No. 40-80 and LT No. 35-82/LT No. 10-83.[2] He also depicted his retrace of both surveys in several single exhibits. Two of them, Exhibits No. 7 and No. 8, showed the relative locations of Plot A and Plot B (together "the plots"), based on French's survey work before trial. Exhibit No. 7 shows the plots without land elevation contour lines. Exhibit No. 8 shows the plots with contour lines. The third one, Exhibit No. 40, shows refined locations of the contoured plots, based on additional information

---

[2] The responsible surveyors acknowledged the mistakes made in the preparation of the surveys used in LT No. 40-80 and LT No. 35-82/LT No. 10-83 and appeared to accept French's retraces as providing essentially accurate locations in the field of both surveys.

acquired by French during the trial.

■ French has produced the most accurate depictions of the surveyed locations of Plot A and Plot B. However, for the reasons discussed below, we find that the plots are the same area of land. Being within the correctly located survey presented in LT No. 35-82/LT No. 10-83, Plot B is in reality the land divided by the Court in LT No. 40-80.

First, significant physical characteristics support this finding. The boundary configurations of Plot A and Plot B are substantially identical. The two plots also contain approximately the same acreage. Plot A contains approximately 13.62 acres. Plot B contains approximately 13.574 acres. Next, and most important, the underlying facts and the issues determined in the prior related litigation fully support this finding. These facts include, but are not limited to: the relative location of the land to a construction cinder site, the gross location of the 1995 Leomiti survey land registration, and the adjudicated land ownership of the westerly slope of the ridge. In the following discussion, Plot B refers to the land.

B. <u>LT No. 40-80</u>

The Court decided LT No. 40-80 on April 13, 1983. In LT No. 40-80, Sasagi Toluao Vaofusi commenced the action to permanently enjoin Otto V. Haleck ("Haleck") from trespassing on her family's communal land. By counterclaim, intervention, and other pretrial proceedings, the Leomiti, Tuana`itau, and Toluao families, all of Pava`ia`i, properly became represented parties. The Court held that the entire parcel was communal land of the three families. Based on the Haleck survey offered for registration and then in evidence, the Court divided the approximately 13.5 acres into three parts—about two acres at the southwesterly end to the Toluao family, five and one-half acres at the northeasterly end to the Leomiti family, and six acres in between to the Tuana`itau family.

The real underlying issue at stake was control of the construction cinder sites on the easterly or Pava`ia`i side of the ridgeline. Cinders for construction projects have been extensively excavated and sold for construction projects on the easterly slope of the ridge immediately below the ridgeline before and since LT No. 40-80 was commenced and decided.

C. <u>LT No. 35-82/LT No. 10-83</u>

The Court decided LT No. 35-82/LT No. 10-83 on May 22, 1989.[3] Both

---

[3] Two other actions preceded these actions. In LT No. 63-81, Lefotu

actions were land registration cases that dealt with overlapping proposals. LT No. 35-82 concerned the offer on the behalf of the Leomiti family to register as the family's communal land its survey of the approximately 17.74 acre parcel. The case also involved objections on behalf of the Tuana'itau and Toluao families, among others. The parties' settlement of the issues in LT No. 35-82 before the trial of LT No. 10-83 was incorporated in the Court's decision dealing with both cases. In essence, the Court authorized registration of the two acres by the Toluao family and of the six acres by the Tuana'itau family as the Court awarded in LT No. 40-80. The Leomiti family was allowed to register the remaining land, estimated by the Court to be between 11 and 12 acres, less approximately 4.08 acres adjudicated as the Lefotu family's communal land in LT No. 10-83 and an overlapping area of slightly less than two acres at the southwest corner of the Leomiti survey stipulated by the Leomiti family to be the Tuana'itau family's land. The Court specifically found that the Leomiti survey at issue in LT No. 35-82 "included a large part of the Haleck survey" at issue in LT No. 40-80 and illustrated the three-way division on its own drawing. See *Leomiti,* 11 A.S.R.2d at 50, n.1. This drawing showed most of the surveyed land on the westerly slope of the ridge. *Id.* (Ex. 1 in the case file). However, it is abundantly clear that the land divided into three portions by the Court in LT No. 40-80 was for the most part actually located on the easterly slope of the ridge where the cinder excavation was taking place.

The Leomiti family eventually acted on the Court's authorization in LT No. 40-80 and specifically in LT No. 35-82/LT No. 10-83. Upon Leomiti family's application, the Territorial Registrar issued the certificate of registration for the Leomiti family's portion on July 14, 1995. The registration was predicated on the Court's decision in LT No, 40-80. However, it was generally consistent with the Leomiti family's survey in evidence in LT No. 35-82/LT No. 10-83. The application contained another survey, done in 1994, showing the Leomiti family's portion to be approximately 5.218 acres substantially located on the easterly slope of the ridge.[4] The Tuana'itau family acted somewhat more

---

Tuilesu ("Lefotu") sought to prevent Leomiti family members from trespassing on the Lefotu family's communal land located adjacent to the public road up to the mountain from Pava'ia'i to A'oloau on the easterly side of the ridgeline. A short time later, in LT No. 67-81, the Leomiti family sought to enjoin Lefotu from trespassing on its land in the same area. Ultimately, all four actions were consolidated, but in 1985 LT No. 63-81 and LT No. 67-81 were dismissed without prejudice, leaving the land ownership dispute between Lefotu and the Leomiti family for decision in LT No. 35-82/LT No. 10-83.

[4] We will comment further on this survey during the discussion below in connection with *Lualemana v. Asifoa, Lualemana v. A'oloau Village Council, Fuimaono v. Toluao,* 16 A.S.R.2d 34 (Land & Titles Div. 1990)

prudently by proposing registration of its portion in 1985, using a survey done that year, showing the area of the Tuana`itau family's portion to be approximately 6.14 acres. The Tuana`itau family's application was met with numerous objections by the Leomiti, Toluao, and Lefotu families, among others, and to this day has remained dormant and progressed no further. To our knowledge, the Toluao family has never attempted to register its portion despite the Court's authorization.

LT No. 10-83 concerned the offer by Lefotu Tuilesu ("Lefotu"), on behalf of the Lefotu family of A`oloau, to register as the family's communal land approximately 4.08 acres adjacent to public road from Pava`ia`i to A`oloau, on the easterly slope of the ridge, called "Tafaga" by the Lefotu family, over objections on behalf of the Leomiti, Tuana`itau, and Toluao families, among others. Lefotu proposed registration of land located within the approximately 17.74 acres proposed for registration by the Leomiti family.

By the decision of May 22, 1989, in LT No. 35-82/LT No. 10-83, the Court awarded the 4.08 acres claimed for the Lefotu family as communal land. On June 8, 1989, the Territorial Registrar issued the certificate of registration of the 4.08 acres as the Lefotu family's communal land. This mathematically left, at face value, approximately 5.66 acres to the Leomiti family as its communal land (17.74 acres less the Lefotu family's 4.08 acres, the Tuana`itau family's six acres, and the Toluao family's two acres). However, according to French's determination, the actual area awarded to the Lefotu family in LT No. 35-82/LT No. 10-83 was approximately 4.166 acres, which we accept as the most accurate surveyed area. Moreover, on December 4, 1985, without objection, Lefotu previously had registered as his individually owned land approximately 0.66 of an acre (0.657 of an acre by French's calculation) immediately adjacent to the west side of the 4.166 acre parcel, which he also called "Tafaga." Thus, the Leomiti's portion of the land, Plot B as reduced, is approximately 4.917 acres (17.74 acres less the Lefotu family's 4.166 acres and Lefotu's 0.657 of an acre, the Tuana`itau family's six acres, and the Toluao family's two acres)

D. LT No. 29-86/LT No. 41-86/LT No. 12-87

*Lualemana v. Atualevao*, 16 A.S.R.2d 34 (Land & Titles Div. 1990) and 17 A.S.R.2d 151 (Land & Titles Div. 1990) ("LT No. 29-86/LT No. 41-86/LT No. 12-87") was decided on August 6, 1990. Certain aspects and other matters in these consolidated cases are significant for purposes of our decision in the present cases, because of their relation to a portion of the land at issue.

---

and *Fuimaono v. Toluao*, 17 A.S.R.2d 151 (Land & Titles Div. 1990) ("LT No. 29-86/LT No. 41-86/LT No. 12-87").

267

The three actions began with Lualemana E. Faoa ("Lualemana"), the principal matai of the Village of A`asu, seeking to prevent Atualevao Sosene Asifoa ("Asifoa") and Lefotu, the same matai involved LT No. 35-82/LT No. 10-83, from occupying Lualemana's lands in A`asu. Other neighbors got involved because the village centers of A`asu and A`oloau are adjacent to each other atop the mountain northwesterly of the ridge involved in the present actions. A.U. Fuimaono ("Fuimaono"), the principal matai of A`oloau, and the A`oloau Village Council asserted that the land at issue was actually in A`oloau.

Fuimaono and the Council also offered for registration as the A`oloau Village's communal land some 420 acres of land. Lualemana, for his family and A`asu, and Tuitele K.A. Le`oso for the Village of Leone filed administrative objections pertaining to portions of the A`oloau survey. In due course, the controversy was referred to the Court for judicial resolution. The eastern boundary of the 420-acre A`oloau survey ran along, and at some points on the easterly side, of the ridge. Toluao, Tuana`itau and other matais, for themselves and Pava`ia`i, were allowed to intervene, even though they had failed to make a timely administrative objection to the A`oloau registration offer. They asserted that the westerly side of the ridge was land belonging to Pava`ia`i families. In response, Fuimaono alleged that Toluao had only recently occupied and destroyed crops on land owned by various A`oloau families within the A`oloau survey area.

Finally, others completed the roster of participants for the trial. The Utu family of A`oloau intervened to protect its land claim within the area claimed by Toluao. Several matai calling themselves the "Aiga Atiulagi" of the Village of Malaeloa also contested a portion of the A`oloau survey.

The A`oloau and Pava`ia`i parties to the three consolidated cases and to the present actions appear to agree that "Lago" is the general name of a large area on the westerly side of the ridge. In dealing with the issues pertaining to this portion of the land within the A`oloau survey, the Court recognized that one powerful chief after another apparently dominated this part of the island of Tutuila during ancient times, and that current generations in both A`oloau and Pava`ia`i relish memories of more extended boundaries of their village confines. *Lualemana*, 16 A.S.R.2d at 38 (citing *Lualemana v. Chiefs of Aitulagi*, 4 A.S.R. 383 (Trial Div. 1963)). The Court found, however, that the A`oloau people began to continuously occupy and cultivate "Lago" at some time after 1946, without displacing people from Pava`ia`i or elsewhere. Any traditional Pava`ia`i use of the area during an earlier era was probably occasional and was, in any event, insufficient to defeat the later claim of the A`oloau people. *Id.* at 38-39 (citing *Lualemana v. Brown*, 3 A.S.R. 348, 352-53 (Trial Div. 1958)). The Court therefore held that land with

"Lago" on the westerly side of the ridge was owned by A`oloau people and presumptively by A`oloau families in accordance with Samoan customary land ownership. *Lualemana*, 16 A.S.R.2d at 39.[5]

The Court in LT No. 29-86/LT No. 4l-86/LT No. 12-87 also specifically observed, and pointedly for present purposes, that the small area within the A`oloau survey on the easterly side of the ridge was just above the cinder pit areas held to be the Tuana`itau family's and Toluao family's communal lands, and above the adjacent and nearby lands held to be the Leomiti family's and Lefotu family's communal lands in LT No. 35-82/LT No. 10-83. *Id.* The Court also noted that it had insufficient evidence before it to determine any overlaps between the A`oloau survey and the adjudicated communal lands of these four families. *Id.*[6]

In LT No. 29-86/LT No. 41-86/LT No. 12-87, the Utu family of A`oloau claimed as its communal land approximately 2.076 acres (as retraced by French), designated as "Logo." The 2.076 acres were located on the westerly slope of the ridge within the larger area generally known as "Lago" and within both the A`oloau and Pava`ia`i surveys then at issue. The Utu family intervened because the Toluao family was cultivating this area. Lefotu claimed that the Utu survey encroached upon other land he had registered, and by stipulation, the Court did not adjudicate the Utu-Lefotu issue. However, having determined that "Lago" on the westerly side of the ridge was property of A`oloau families, the Court did enjoin Toluao from further occupancy and cultivation of "Lago" on the westerly side, including the Utu family's claimed land. Therefore, the Utu family's claim pertains to an area outside of Plot B, the correct location of the land actually adjudicated in LT No. 40-80 and confirmed in LT No. 35-82/LT No. 10-83. The Utu family's claimed land is largely within Plot A, determined by French in the present actions to be the location of the Haleck survey used in LT No. 40-80.

Two other parcels within "Lago" on the westerly slope of the ridge are

---

[5] The Court declined to determine any precise boundary between A`oluao and Pava`ia`i, based on the law that only that the owner, almost always a family, of land in American Samoa can register ownership. *Lualemana*, 16 A.S.R.2d at 39. The concept of village ownership of land contravenes Samoan custom, except in limited circumstances not applicable in *Lualemana* situation. *Id.*; *see also Olo v. Fuimaono*, AP No. 27-81, slip op. (App. Div. Apr. 18, 1981).

[6] The Court in LT No. 29-86/LT No. 41-86/LT No. 12-87 assumed that the lands judicially determined to be the communal lands of Toluao, Tuana`itau, Leomiti, and Lefotu families were registered. *Lualemana*, 16 A.S.R.2d at 39. In fact, only the Lefotu family's communal land was registered when the decision in the three actions was issued on August 6, 1990.

involved in the present actions. Moananu had one parcel, named "Saiaulama" and containing approximately 1.5 acres, surveyed as the communal land of the Moananu family of A'oloau. This parcel is again largely within Plot A of French's retrace. While we lack any evidence of its registration as yet, we note that "Saiaulama" is located entirely outside of Plot B, the true location of the land, as adjudicated in LT No. 40-80 and confirmed in LT No. 35-82/LT No. 10-83.

Moananu and Thompson had the second of these two other parcels within "Lago" on the westerly slope of the ridge surveyed as their individually owned land. Moananu is the sa'o (head chief) of the Moananu family. Thompson is Moananu's sister and lives on this parcel. This parcel, named "Saiaulama-Fita" and containing approximately 2.803 acres, was registered on May 18, 1992, without objection. Their action was consistent with the Court's August 6, 1990 decision in LT No. 29-86/LT No. 41-86/LT No. 12-87. "Saiaulama-Fita" is largely located outside of Plot E, the true location of the land, as adjudicated in LT No. 40-80 and confirmed in LT No. 35-82/LT No. 10-83. This brings us to several outstanding survey issues that are apparently still loose ends to full closure of the controversies at issue.

E. Outstanding Survey Issues

Refined surveys of the three parcels within Plot B need to be prepared in accordance with the division from the decision in LT No. 40-80. The two internal boundaries between the three parcels must be determined. The end result must give: (1) the Toluao family approximately two acres at the southwesterly end of Plot B; (2) the Tuana'itau family approximately six acres immediately adjacent to the Toluao parcel; and (3) the balance of the acreage at the northeasterly end to the Leomiti family.

The Leomiti family's parcel appears to need further survey refinement at the north end. The Leomiti family's survey of approximately 5.218 acres registered on July 14, 1995, attempts, it seems, to coincide with the boundaries between the Leomiti family's parcel and the small, peculiar portion of the Moananu/Thompson parcel jutting out of the main area to the southeast. However, we cannot reach any certain conclusion on this surmise based on the surveys presently in evidence. It also appears that both the Leomiti family 5.218 acre survey and the Moananu/Thompson 2.803 acre survey registered on May 18, 1992, may not take into account, at least correctly, the Lefotu 0.657 of an acre survey registered earlier on December 4, 1985.

F. Entitlement to Relief

The Leomiti and Tuana'itau families, and incidentally, the Toluao family

are entitled to determinations of their respective communal land parcels within Plot B. The Leomiti family with respect to its communal land within Plot B, Moananu and Thompson with respect to their individually owned land, and incidentally, Lefotu with respect to his individually owned land, are entitled to determination of the boundaries between these three parcels of land. The determinations shall be consistent with the findings of fact discussed above.

Until completion of the necessary survey work defining the boundaries, the Court can neither adjudicate final determinations nor authorize the accompanying registrations. The Court will also rule on the prayers for permanent injunctions and trespass damages in the final order.

## Order

1. Plot B is the land actually adjudicated and divided into three parcels in LT No. 40-80: approximately two acres owned by the Toluao family as communal land; approximately six acres owned by the Tuana`itau family as communal land; and the remaining area, approximately five and one-half acres, owned by the Leomiti family as communal land, subject to refinement of the boundaries of this parcel, after the surveyor's further consideration, with the individually owned lands belonging to Moananu and Thompson and to Lefotu.

2. The parties shall have 30 days from the entry of this order to agree on a surveyor, the division of costs, and other necessary conditions for the additional survey of the parcels at issue within and adjoining Plot B, and to advise the Court of their agreement on these matters. Should the parties fail to reach an agreement, the Court will hold a hearing to appoint a surveyor and apportion costs.

3. The existing preliminary injunctions shall remain in full force and effect until further order of the Court.

It is so ordered.